## No. 22-2007

# In the
# United States Court of Appeals
# for the Seventh Circuit

DONALD J. KINSELLA,

*Plaintiff-Appellant,*

v.

BAKER HUGHES OILFIELD OPERATIONS, LLC, and
BAKER HUGHES, A GE COMPANY, LLC,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 18-cv-04589
The Honorable Robert W. Gettleman, Judge Presiding.

## BRIEF OF PLAINTIFF-APPELLANT

TIMOTHY J. COFFEY
THE COFFEY LAW OFFICE, P.C.
118 N. Clinton Street, Suite 125
Chicago, Illinois 60661
(312) 627-9700

*Attorney for Plaintiff-Appellant Donald Kinsella*

## ORAL ARGUMENT REQUESTED

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2007

Short Caption: Donald Kinsella v. Baker Hughes et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

      Donald Kinsella

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

      The Coffey Law Office, P.C., and The Keleher Appellate Law Group, LLC

(3)     If the party, amicus or intervenor is a corporation:

      i)     Identify all its parent corporations, if any; and

           NA

      ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

           NA

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

      NA

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

      NA

Attorney's Signature: /s/ Timothy J. Coffey       Date: 12/02/2022

Attorney's Printed Name: Timothy J. Coffey

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: 118 N. Clinton Street, Suite 125, Chicago, IL 60661

Phone Number: 312-627-9700       Fax Number: 312-627-9701

E-Mail Address: tcoffey@worker-law.com

rev. 12/19 AK

TABLE OF CONTENTS

DISCLOSURE STATEMENT…………………………………………………………...i

TABLE OF AUTHORITIES………………………………………………………..3

JURISDICTIONAL STATEMENT…………………………………………………...5

STATEMENT OF THE ISSUES…………………………………………….............6

INTRODUCTION……………………………………………...........................7

STATEMENT OF THE CASE………………………………………………...……7

SUMMARY OF ARGUMENT…………………………………………………..13

ARGUMENT……………………………………………………………..14

I.      Standard of Review...................................................................14

II.     Wickliff Exceeded His Arbitral Powers When He Injected New, Illegitimate Elements of Proof and Applied Them to Deny the Failure to Accommodate Claim....................................................................................15

        A.  The Parties Did Not Submit Discriminatory Intent or Causation Failure to Accommodate Issues................................................................15

        B.  Wickliff did not deny the failure to accommodate claim because of any alleged failures to comply with the ADA interactive process; and, even if he did, it was one more *ultra vires* act....................................................20

III.    The District Court Erred in Finding that the Arbitrator did not Require Kinsella to Prove Discriminatory Intent and Causation........................25

IV.     The District Court Also Erred in Finding that the Arbitrator Merely Applied the Wrong Legal Standard or Committed an Error of Fact or Law........27

CONCLUSION..................................................................................34

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7), RULE 32(g) AND
CIRCUIT RULE 32(c)............................................................................................................34

PROOF OF SERVICE............................................................................................................35

CIRCUIT RULE 30(d) STATEMENT...................................................................................36

ATTACHED REQUIRED SHORT APPENDIX

## TABLE OF AUTHORITIES

CASES                                                                                      PAGE(S)

*AGCO Corp. v. Anglin,*
216 F.3d 589 (7th Cir. 2000) ...........................................................................16

*American Postal Workers Union, Milwaukee Local v. Runyon,*
185 F.3d 832 (7th Cir. 1999) ...........................................................................14

*Anheuser-Busch, Inc. v. Local Union 744, IBT,*
280 F.3d 1133 (7th Cir. 2002) .........................................................................16

*ANR Advance Transp. Co. v. International Bhd. of Teamsters, Local 710,*
153 F.3d 774 (7th Cir. 1998) ...........................................................................14

*BEM I, LLC v. Anthropologie, Inc.,*
301 F.3d 548 (7th Cir. 2002) ...........................................................................27

*Bultemeyer v. Fort Wayne Community Sch.,*
100 F.3d 1281 (7th Cir. 1996) .........................................................................15

*Butler Mfg. Co. v. USW,*
336 F.3d 629 (7th Cir. 2003) ...........................................................................30

*Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.,*
935 F.2d 1501 (7th Cir. 1991) .........................................................................16

*Crosby v. Sears Holding Corp.,*
2018 U.S. Dist. LEXIS 45182 (N.D. Ill. March 20, 2018) ........................................31

*Dalton v. Subaru-Isuzu Automotive, Inc.,*
141 F.3d 667 (7th Cir. 1998) ...........................................................................22

*Edstrom Industries, Inc. v. Companion Life Insurance Co.,*
516 F.3d 546 (7th Cir. 2008) ...........................................................................17

*EEOC v. United Airlines, Inc.,*
693 F.3d 760 (7th Cir. 2012). ..........................................................................21

*Feldman v. Olin Corp.,*
692 F.3d 748 (7th Cir. 2012) ...........................................................................23

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938 (1995) .....................................................................................14

*Flender Corp. v. Techna-Quip Co.,*
953 F.2d 273 (7th Cir. 1992) ..................................................................26, 27, 28

*Flexible Mfg. Sys. Pty. Ltd. v. Super Products Corp.,*
86 F.3d 96 (7th Cir. 1996) ........................................................................27, 28

*Gile v. United Airlines, Inc.,*
213 F. 3d 365 (7th Cir. 2000) ..........................................................................20

*Hendricks-Robinson v. Excel Corp.,*
154 F.3d 685 (7th Cir. 1998) ...........................................................................23

*Lenker v. Methodist Hosp.,*
210 F.3d 792 (7th Cir. 2000) ……………………………………………………15

*Kummer v. Ill. Cent. R.R. Co.,*
2016 U.S. Dist. LEXIS 94372 (N.D. Ill. July 20, 2016) ………………………23, 24

*Miller v. Illinois Dep't of Corrections,*
107 F.3d 483 (7th Cir. 1997) …………………………………………………23

*Monee Nursery & Landscaping Co. v. Int'l Union of Operating Engineers,*
348 F.3d 671 (7th Cir. 2003) …………………………………………………16

*Northern Indiana Public Service Co. v. United Steelworkers of America AFL-CIO-CLC,*
243 F.3d 345 (7th Cir. 2001) …………………………………………………16

*Rehling v. City of Chicago,*
207 F.3d 1009 (7th Cir. 2000) ………………………………………………..20

*Sieberns v. Wal-Mart Stores, Inc.,*
125 F.3d 1019 (7th Cir. 1997) ………………………………………………..20

*Tootsie Roll Indus., Inc. v. Local Union No. 1,*
832 F.2d 81 (7th Cir. 1987) ……………………………………………16, 17

*United Food & Commer. Workers, Local 1546 v. Illinois-American Water Co.,*
569 F.3d 750 (7th Cir. 2009) …………………………………………………14

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,*
363 U.S. 593 (1960)……………………………………………………………16

*Williams v. RI/WFI Acquisition Corp.,*
2009 U.S. Dist. LEXIS 11115 (N.D. Ill. Feb. 11, 2009) ……………………………..30


OTHER AUTHORITIES                                                    PAGE(S)

42 U.S.C. § 12111(10) ………………………………………………………..20
29 C.F.R. § 1630.2(p)) ……………………………………………20, 21, 22
42 U.S.C. § 12112(b)(5)(A) …………………………………………………15
9 U.S.C. § 10(a)(4) ……………………………………………………7, 27
42 U.S.C. § 12111(9) …………………………………………………………22
Seventh Cir. Civ. Instrs. 4.03…………………………………………………*passim*
EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship
under the ADA, Reassignment……………………………………………………24

## JURISDICTIONAL STATEMENT

Plaintiff's claims in this appeal arose under Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"). R. 1, pp. 1-3, 7-8.[1]

Original jurisdiction over Plaintiff's ADA claims was proper in the District Court under 28 U.S.C. §§ 1331, 1337, and 1343, and 29 U.S.C. § 216(b).

On May 11, 2022, the District Court denied Plaintiff's Motion to Vacate (In Part) Arbitration Award. R. 61; A 1-4. Plaintiff timely filed his notice of appeal on June 6, 2022. R. 62. On July 1, 2022, the District Court entered final judgment for Defendants and terminated the case. R. 66, 67; A 5.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] Citations to documents in the Appendix use the form "A 1." Citations to documents that are not in the Appendix but that are part of the Record on Appeal from N.D. Ill. Case No. 18-cv-04589, (e.g., pleadings, briefs and exhibits filed with the District Court) are to the District Court's docket number and page number (where necessary) and use the form "R. 24," and "R. 48, p. 6."

## STATEMENT OF ISSUES

I.     Whether the District Court erred in finding that the arbitrator did not exceed his powers or so imperfectly execute them to preclude a mutual, final, and definite award upon the subject matter submitted to him when he ignored the law as agreed and submitted to him jointly by the parties, and instead, fabricated and injected his own, extrajudicial illegitimate elements of proof and applied them to deny Plaintiff's ADA failure to accommodate claim.

II.     Whether the District Court erred when it determined that a breakdown in the ADA interactive process with fault on both sides was alone sufficient to support the arbitrator's denial of Plaintiff's ADA failure to accommodate claim.

III.     Whether the District Court erred when it determined that the arbitrator's explicit findings that Defendant lacked discriminatory animus and intent set forth as part of his basis for denying Plaintiff's ADA failure to accommodate claim did not form the basis for the arbitrator's denial of that claim.

IV.     Whether the District Court erred when it ignored the arbitrator's explicit findings that Defendant did not fail to accommodate Plaintiff because of his disability set forth as part of his basis for denying Plaintiff's ADA failure to accommodate claim and failed to analyze or rule on whether such causation findings formed the basis for the arbitrator's denial of that claim.

## INTRODUCTION

Plaintiff Donald Kinsella asks this Court to reverse the District Court's denial of his Motion to Vacate the portion of Arbitration Award that rejected his ADA failure to accommodate claim. As demonstrated below, the arbitrator's rejection was based not on a mere error of fact or law, or any misinterpretation of the law. Rather, the arbitrator simply ignored the well-established law as agreed and submitted to him jointly by the parties, and instead, fabricated and injected his own, extrajudicial illegitimate elements of proof and applied them to deny Kinsella's claim. In so doing, the arbitrator unquestionably exceeded his arbitral powers. Accordingly, this Court can and should reverse the district court's denial of the motion to vacate pursuant to 9 U.S.C §10(a)(4) and remand the claim back to the arbitrator with instructions to apply the well-established ADA elements of proof jointly submitted by the parties.

## STATEMENT OF THE CASE

A.    Relevant Background

Kinsella filed this action on July 2, 2018, alleging in part that Defendants, (hereinafter "Baker Hughes") failed to accommodate his disability in violation of the ADA when they failed to reassign him to the dispatcher position in August 2016 when it opened. On September 6, 2018, this matter was stayed pending arbitration (R. 15) pursuant to an arbitration provision in an employment agreement Kinsella signed in July 2012 at the start of his employment that provided:

17. ARBITRATION. Either Employee or Company may elect to submit any controversy or claim arising out of or relating to Employee's employment, including but not limited to termination and the manner or reason thereof, or breach of this Agreement,  and claims arising under the federal or state law for discrimination based on sex, race, disability, national origin, or other impermissible basis, to binding arbitration for final settlement in accordance with the rules of the American Arbitration Association. . .  R. 52-1.

The parties thereafter selected attorney A. Martin Wickliff, Jr., as arbitrator and proceeded through motion practice and discovery. Baker Hughes served its Answer and Affirmative Defenses to Claimant's Complaint in July 2019 and supplemented it in January 2020 to include answers to certain paragraphs of Kinsella's ADA failure to accommodate claim. R. 52-2, 52-3. At the end of discovery, both parties moved for partial summary judgment on Kinsella's failure to accommodate claim with respect to the reasonable accommodation of reassignment to an open dispatcher position. R52-4-8.

In its summary judgment motion, Baker Hughes only argued that Kinsella "untimely applied" for the open dispatcher job. R. 52-4 pp. 5-6. In its reply brief, Baker Hughes asserted that Seventh Circuit Pattern Jury Instruction 4.03 sets forth the appropriate elements Kinsella was required to prove in order to prevail on his failure to accommodate claim.  R. 52-5, p. 2. Pattern Jury Instruction 4.03[2] does not require

---

[2] Pattern JI 4.03 sets forth five elements: 1. Plaintiff had a disability. . . ; 2. Plaintiff was qualified to perform the job; 3. Plaintiff requested an accommodation; 4. Defendant was aware of Plaintiff's disability at the time of Plaintiff's request; 5. Defendant failed to provide Plaintiff with a reasonable accommodation. JI 4.03 goes on to state that, "[I]f you find that Plaintiff has proved each of these things by a preponderance of the evidence, you should turn to the issue of Plaintiff's damages."

Kinsella prove that Baker Hughes acted with discriminatory animus or intent, or that it failed to accommodate Kinsella because of his disability. Indeed, Baker Hughes did not argue that Kinsella was required to prove that Baker Hughes acted with discriminatory animus or intent or failed to accommodate Kinsella because of his disability to prevail. R52-4, 5. In his response, Kinsella also relied on the pattern instruction 4.03 elements tailored for the facts and issues at hand, i.e., Baker Hughes' failure to reassign Kinsella to the open dispatcher position. R. 52-6, p. 4.

Likewise, in support of his summary judgment motion, Kinsella again argued that he was required to prove the five 4.03 elements. R. 52-7, p. 8. Baker Hughes again did not invoke additional elements, or contend Kinsella had to prove it acted with discriminatory animus or intent, or that it failed to accommodate Kinsella because of his disability. R. 52-8. Instead, Baker Hughes limited its response to its contentions that Kinsella was not disabled under the ADA, did not timely apply for the open dispatcher position, and was not qualified for the position. *Id.*

On February 2, 2021, Arbitrator Wickliff entered his Memorandum Opinion on the parties' cross motions for partial summary judgment. R. 52-9. Wickliff granted Kinsella's motion in part and held that he was disabled under the ADA as a matter of law. *Id.* pp. 7-9. Wickliff however, denied both parties summary judgment on the failure to accommodate claim after finding that "genuine issues of material fact regarding Claimant's qualifications to be assigned to the Dispatch job and the timing issues of the

submission of his application; these issues must be resolved after an evidentiary hearing." *Id.* pp. 9-11. Wickliff did not state that Kinsella had to prove that Baker Hughes acted with discriminatory animus or intent, or that it failed to accommodate Kinsella because of his disability to prevail on his failure to accommodate claim. R. 52-9.

Arbitration hearing dates were then set and both parties submitted Prehearing Briefs identifying the contested issues to be decided at hearing. R. 52-10, 11. Both parties again asserted that Kinsella had to prove the five 4.03 Pattern Instruction elements to establish failure to accommodate with respect to reassignment to the open dispatcher position. R. 52-10, pp. 2-3; R. 52-11, pp. 3-4. Neither party asserted Kinsella had to prove Baker Hughes acted with discriminatory animus or intent, or that it failed to accommodate Kinsella because of his disability to prevail on his failure to accommodate claim. *Id.* Kinsella identified the sole contested issue with respect to his failure to accommodate claim as whether he was qualified for the open dispatcher job and then detailed the admissible evidence that would show he was qualified for the job. R. 52-10, pp. 2-3. Baker Hughes continued to argue that Kinsella had to show that he timely applied for the job. R. 52-11, pp. 3-6. Kinsella countered with numerous Seventh Circuit cases holding that it was Baker Hughes' duty to first identify alternative open positions and then to determine whether Kinsella was qualified for any of them, and that he did not have to show he timely applied or applied at all in order to prevail on his failure to accommodate claim. R. 52-10, pp. 3-7.

On October 4-6, 2021, the parties participated in an evidentiary arbitration hearing before Wickliff. R. 51-11, 14. There was no argument or discussion that Kinsella had to prove that Baker Hughes acted with discriminatory animus or intent, or that it failed to accommodate Kinsella because of his disability to establish a failure to accommodate. R. 51, p. 4.

Following the hearing, both parties submitted Post-Hearing Briefs again asserting that Kinsella had to prove the five 4.03 Pattern Instructions elements to prevail on his failure to accommodate claim with respect to reassignment to the open dispatcher position. R. 52-12, pp. 2-3; R. 52-13, pp. 10-14. Again, neither party asserted or suggested that Kinsella had to prove that Baker Hughes acted with discriminatory animus or intent, or that it failed to accommodate Kinsella because of his disability in order to win his claim. *Id.*

On February 9, 2022, Wickliff issued his Memorandum Opinion and Award denying the failure to accommodate claim. A 6-23. Wickliff found that Kinsella was qualified for the position. A 13-15. He then, however, ruled that Baker Hughes did not fail to reasonably accommodate Kinsella when it failed to reassign him to the open dispatcher job based on the following findings:

- Baker Hughes Human Resources representative and decision-maker Kristyn Martinez did not fail to accommodate Kinsella "due to his disability;"

- "[T]here is no evidence in the Record that [Martinez] harbored any discriminatory animus against [Kinsella];"

11

- "If Martinez did not want [Kinsella] to be assigned the dispatch job because of his disability, she would not have initiated the identification of the Dispatch position to [Kinsella] as a possible accommodation, . . .;" and,

- "[T]he credible evidence shows no discriminatory animus by Martinez, or that she intentionally kept [Kinsella] from being assigned to the Dispatch job because of his disability, or that she intentionally caused the interactive process to fail." A 15.

On March 18, 2022, Kinsella asked the District Court to vacate the portion of the arbitration award denying his failure to accommodate claim. R. 51-52. On May 11, 2022, the District Court declined. R. 61. The court determined: (1) the arbitrator's finding that there was a breakdown in the ADA IP with fault on both sides was sufficient in and of itself to support the denial of Kinsella's failure to accommodate claim, and (2) the arbitrator's findings that there was no discriminatory animus in connection with the failure to accommodate claim was "simply added," and did not indicate that the arbitrator "required [Kinsella] to bear the burden of establishing discriminatory intent or animus, nor did he indicate that such a finding was an element of the claim." A 3-4.

This appeal followed.

## SUMMARY OF THE ARGUMENT

The District Court erred when it determined that Arbitrator Wickliff did not exceed the powers conferred upon him by the parties when he ignored the well-established law as agreed and submitted to him jointly by the parties, and instead, fabricated and injected his own, extrajudicial illegitimate elements of proof and applied them to deny Kinsella's ADA failure to accommodate claim.

The District Court also erred error when it determined that a breakdown in the interactive process with fault on both sides was alone sufficient to support Arbitrator Wickliff's denial of Kinsella's ADA failure to accommodate claim.

The District Court further erred when it determined that Arbitrator Wickliff's explicit findings that Baker Hughes lacked discriminatory animus and intent did not form the basis for his denial of Kinsella's failure to accommodate claim.

Finally, the District Court erred when it ignored the Arbitrator's explicit findings that Baker Hughes did not fail to accommodate Kinsella because of his disability and failed to analyze whether such causation findings formed the basis for the Arbitrator's denial of Kinsella's failure to accommodate claim

## ARGUMENT

I.     **Standard of Review.**

The Court reviews the District Court's denial of a motion to vacate an arbitration award *de novo*, applying the same standards to evaluate the arbitrator's decision as the district court. *ANR Advance Transp. Co. v. International Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998). The review is thus essentially that of the court of first decision. *United Food & Commer. Workers, Local 1546 v. Illinois-American Water Co.*, 569 F.3d 750, 754 (7th Cir. 2009).

While judicial review of arbitration awards is limited, it is not toothless. The Federal Arbitration Act authorizes the Court to vacate an arbitration award when an arbitrator exceeds his contractual powers or so imperfectly executes them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a)(4). In *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358 (1960), the Supreme Court set forth the applicable standard of review for arbitration awards, stating:

> An arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. Id. at 597.

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes--but only those disputes--that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). The parties can (and did here) limit the arbitrator's contractual authority to address a dispute through: (1) the arbitration agreement; and (2) the issues submitted to the arbitrator. *American Postal Workers Union, Milwaukee Local v. Runyon*, 185 F.3d 832, 835 (7th Cir. 1999). Thus, when a party to the arbitration contends that the arbitrator acted beyond his designated authority, the Court determine whether the arbitrator's decision exceeded the contractual limitations placed upon him and the issues submitted by the parties. *Id.*

## II.     Wickliff Exceeded His Arbitral Powers When He Injected New, Illegitimate Elements of Proof and Applied Them to Deny the Failure to Accommodate Claim.

### A.  The Parties Did Not Submit Discriminatory Intent or Causation Failure to Accommodate Issues.

It is well settled that the ADA does not require a plaintiff to prove a defendant's discriminatory intent or animus, or that a failure to accommodate was due to a disability to prevail. 42 U.S.C. § 12112(b)(5)(A); *see also* Seventh Cir. Civ. Instrs. 4.03; *Bultemeyer v. Fort Wayne Community Sch.*, 100 F.3d 1281, 1283-84 (7th Cir. 1996) (holding that if a plaintiff demonstrates that the employer should have reasonably accommodated the disability and did not, the employer has discriminated under the ADA and is liable); *Lenker v. Methodist Hosp.*, 210 F.3d 792, 799 (7th Cir. 2000) (the issue

15

of pretext and burden shifting are "unnecessary and inappropriate" in reasonable accommodation claims). Wickliff's denial of the failure to accommodate claim because Kinsella failed to prove that Baker Hughes acted with discriminatory intent or animus and/or failed to accommodate Kinsella because of his disability was therefore clearly erroneous; but that is not all.

Worse, because these issues were never submitted to Wickliff by either party, he was powerless to inject them into the controversy, and he trampled over the bounds of his authority when he did so in an outcome determinative manner. *See American Postal Workers Union v. Runyon*, 185 F.3d 832, 835 (7th Cir. 1999); *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) ("Arbitrators have the authority to decide only those issues actually submitted by the parties."); *Monee Nursery & Landscaping Co. v. Int'l Union of Operating Engineers*, 348 F.3d 671, 677 (7th Cir. 2003).

While Wickliff's findings of fact and legal conclusions with respect to the issues submitted to him are accorded deference, his interpretation of the scope of the issues before him must rationally flow from the parties' submissions. *Id.* Arbitrators cannot resolve matters haphazardly. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 ("[Arbitrators do] not sit to dispense [their] own brand of industrial justice."); *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1505 (7th Cir. 1991) ("The arbitrator is not free to think or to say, 'The contract says X, but my view of sound policy leads me to decree Y.'") (citation omitted).

16

Therefore, courts will vacate arbitration awards premised on thoughts, feelings, policies, or laws outside the agreement and/or issues presented to them by the parties. *Northern Indiana Public Service Co. v. United Steelworkers of America AFL-CIO-CLC*, 243 F.3d 345, 347 (7th Cir. 2001) (internal quotations and citations omitted).

Wickliff's abuse of power in injecting his own illegitimate elements of proof and ignoring the well-established failure to accommodate elements submitted by the parties mirrors the numerous decisions vacating awards by arbitrators who failed to interpret labor-management agreements that were at issue or injected their own terms into the agreements and relied on them to decide the controversy. *See Tootsie Roll Indus., Inc. v. Local Union No. 1*, 832 F.2d 81, 84-85 (7th Cir. 1987) (affirming vacation of arbitration award in an employment termination dispute where arbitrator applied a more lenient general absenteeism policy even though the parties had entered into a stricter agreement); *Anheuser-Busch, Inc. v. Local Union 744, IBT*, 280 F.3d 1133, 1138-45 (7th Cir. 2002) (reversing and remanding with instructions to vacate the arbitration award after finding that the arbitrator disregarded the clear and unambiguous language of the CBA and instead injected and relied on his own contractual terms; or, as the court stated, "created an escape hatch through which he could dispense his own brand of industrial justice.").

Here, like *Tootsie Roll* and *Anheuser-Busch*, Wickliff exceeded his arbitral powers when he ignored the well-established, *prima facie* elements submitted to him by the

17

parties and injected his own, extrajudicial elements and applied them to deny Kinsella's failure to accommodate claim. Wickliff did not cite to or discuss the Pattern 4.03 elements agreed to and submitted by the parties. A 15-16. He did not cite to or discuss any provision of the ADA or any case in creating and applying his discriminatory intent and causation requirements to deny Kinsella's failure to accommodate claim. *Id.* He did not indicate that he was construing or interpreting any law yet alone the law submitted to him. *Id.* In so doing, Wickliff went beyond the limits of his power than the arbitrator in *Tootsie Roll* where the parties agreed their arbitrator at least was interpreting the labor contract at issue. *Tootsie Roll Indus., Inc.*, 832 F.2d at 83. There is simply no substantive difference between the *Tootsie Roll* arbitrator's ultra vires application of the employer's regular attendance policy (which was not agreed to by the parties) and Wickliff's creation and dispositive application of discriminatory intent and causation elements of proof here. They both went beyond the bounds of interpreting and in fact disregarded the applicable law as submitted to them by the parties – provisions of a labor agreement in Tootsie Roll and the ADA statutory language and cases interpreting failure to accommodate by reassignment here.

In addition to *Tootsie Roll* and *Anheuser Busch*, the blueprint for reversal is *Edstrom Industries, Inc. v. Companion Life Insurance Co.*, 516 F.3d 546 (7th Cir. 2008). In *Edstrom*, the parties entered into an insurance contract with an arbitration clause specifying that Wisconsin substantive law would govern any dispute between the

parties. *Id.* at 549. During arbitration, the plaintiff argued for the application of a specific Wisconsin insurance statute. *Id.* at 552-53. The arbitrator never mentioned the statute nor demonstrated why it was inapplicable and found in the defendant's favor, although the statute mandated a contrary result. *Id.* The district court denied the motion to vacate the award. *Id.* at 549.

This Court reversed. It held that "precisely because arbitration is a creature of contract, the arbitrator cannot disregard the lawful directions the parties have given them. If they tell him to apply Wisconsin law, he cannot apply New York law." *Id.* at 552. The court determined that although the arbitration clause required the arbitrator to apply Wisconsin substantive law, the arbitrator did not even attempt to apply the relevant statutory provision and ignored the statute. *Id.* at 552-53. The court emphasized that while mistakes of law by arbitrators are not grounds for overturning an award, the contractual nature of arbitration entitles the parties to have the arbitrator follow their directives. *Id.* at 552. Because the arbitrator made no effort to apply Wisconsin law, the court reversed the denial of the motion to vacate. *Id.* at 553.

Similarly, Wickliff ignored the well-established elements of proof for failure to accommodate claim that were agreed to and submitted to him by the parties. Going rogue, he instead injected his own elements and then rejected Kinsella's claim based thereon. This case therefore satisfies 9 U.S.C. §10(a)(4), and the District Court therefore erred in denying the motion to vacate.

**B. Wickliff did not deny the failure to accommodate claim because of any alleged failures to comply with the ADA interactive process; and, even if he did, it was one more *ultra vires* act.**

The District Court also committed plain error when it determined that a breakdown in the ADA "interactive process" with fault on both sides was alone sufficient to support denial of the failure to accommodate claim. R. 61, p. 4. The District Court, however, cited no authority for this novel proposition. Logically, with both sides at fault in the interactive process as Wickliff found and Kinsella not having to prove that he was fault free to prevail on his failure to accommodate claim, any interactive process issues became irrelevant to the claim and could not have prevented Kinsella's success

Additionally, like Wickliff's concocted elements of discriminatory intent and causation, compliance with interactive process is neither a Pattern Jury Instruction element of proof, nor an issue "submitted" by the parties. See Pattern Jury Instruction 4.03. Whether the parties complied with their respective ADA duties to engage in an interactive process to identity potential reasonable accommodations was not an issue submitted to arbitration by the parties. Just like discriminatory intent and causation, under these facts where a reasonable accommodation was identified and readily available, Kinsella did not have to prove that he complied with his interactive process duty or that Baker Hughes violated its duty to perfect and prevail on his failure to accommodate claim.

20

As is well established in this Circuit, an employer's failure to engage in good faith in the interactive process is not an independent basis of liability under the ADA. In fact, the purpose of the interactive process is to identify a reasonable accommodation. *See Gile v. United Airlines, Inc.*, 213 F. 3d 365, 373 (7th Cir. 2000); *Rehling v. City of Chicago*, 207 F.3d 1009, 1015-16 (7th Cir. 2000), quoting *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1023 (7th Cir. 1997) ("the interactive process the ADA foresees is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought."). Thus, once a reasonable accommodation is identified, as Wickliff correctly determined occurred on August 22, 2016 when the dispatcher job opened (A 9, fn 1), the interactive process ended and the issue turned to whether Baker Hughes failed to accommodate Kinsella's disability by affirmative reassignment or appointment to the open job based on the Pattern Jury Instruction 4.03 elements (as well as any affirmative defense asserted by the employer - which Baker Hughes did not assert here (see R. 52-2, Baker Hughes' Answer, pp. 14-16) - that the identified reasonable accommodation would have caused it "undue hardship" under 42 U.S.C. § 12111(10) and 29 C.F.R. § 1630.2(p)).

Accordingly, based on Wickliff's correct finding that the dispatcher position opened and was identified as a reasonable accommodation in late August 2016 (see A 9-10), there simply was no interactive process issue involved here. Therefore, any

statements or "findings" by Wickliff as to the interactive process, whether there was a

breakdown, and whether one or both parties were at fault are irrelevant to the

determination of Kinsella's failure to accommodate by reassignment to the open

dispatcher position claim. Moreover, they were not submitted by the parties as a

required element of proof. Such statements are thus *dicta*.

Similarly, in addition to not being submitted to Wickliff as an issue or element

that Kinsella had to prove, the law in this Circuit is clear that Kinsella had no duty to

"apply" or "timely apply" for the open dispatcher job.

First, the Pattern Jury Instruction 4.03 failure to accommodate *prima facie* case

includes no such requirement. *See also* EEOC *v. United Airlines, Inc.*, 693 F.3d 760, 761

(7th Cir. 2012). To the contrary, with respect to the reasonable accommodation of

"reassignment," the ADA mandates that an employer appoint employees with

disabilities to vacant positions for which they are qualified, provided that such

accommodations would be ordinarily reasonable and would not present an undue

hardship to that employer. *EEOC v. United Airlines, Inc.*, 693 F.3d at 761. Here, Baker

Hughes' duty under the ADA to appoint Kinsella to the dispatcher position arose when

the position opened August 22, 2016 (A 9, fn 1), at the latest, or, if it had any concerns

whether Kinsella was qualified, take affirmative action to resolve those concerns. The

undisputed evidence showed that Baker Hughes did neither and by such inaction

violated the ADA (i.e., such evidence satisfied each of the Pattern Jury Instruction 4.03

elements of proof). Baker Hughes delaying notice to Kinsella of the job opportunity and then requiring him to compete with other candidates through an application process (see A 9, fn 1) does not comply with the ADA and law in this Circuit.

Next, the ADA states that reasonable accommodation may include "reassignment to a vacant position." 42 U.S.C. § 12111(9). While neither Wickliff nor the District Court analyzed or interpreted this language, there is no indication in the language or from any case in this Circuit that it means "may apply" for a vacant position or may be eligible to compete for assignment to a vacant position if timely application is received or if the disabled worker is the best candidate based on any application process. In short, "reassignment to a vacant position" is an affirmative directive to an employer to do just that.

Third, Seventh Circuit case law also supports Kinsella. In *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 678 (7th Cir. 1998), the Court clarified an employer's affirmative duty to accommodate by reassignment:

> The employer must first identify the full range of alternative positions for which the individual satisfies the employer's legitimate, nondiscriminatory prerequisites, and then determine whether the employee's own knowledge, skills, and abilities would enable her to perform the essential functions of any of those alternative positions, with or without reasonable accommodations. The employer's duty to accommodate requires it to consider transferring the employee to any of these other jobs, including those that would represent a demotion. See 29 C.F.R. § 1630.2(j)(3) (ii)(C) (defining "broad range of jobs in various classes"); 29 C.F.R. Pt. 1630, App. § 1630.2(o). The critical factor is the match between the employee's knowledge, skills, and abilities, and the legitimate requirements for other positions with the employer; it is not whether those other positions look exactly like the job the employee's disability prevents him or her

from performing. *Dalton*, 141 F.3d at 678; *see also Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 694-95 (7th Cir. 1998).

Moreover, "[e]ven if an employee who as here becomes disabled while employed just says to the employer, 'I want to keep working for you--do you have any suggestions?'" the employer has a duty under the Act to ascertain whether he has some job that the employee might be able to fill." *Miller v. Illinois Dep't of Corrections*, 107 F.3d 483, 486-87 (7th Cir. 1997).

At bottom, there is nothing in the ADA reassignment language that places any duty on the disabled worker to "apply" or timely apply or be the most qualified candidate for the open job. 42 U.S.C. § 12111(9); *EEOC v. United Airlines, Inc.*, 693 F.3d at 764 (holding that deviation from a best-qualified selection policy is not an undue hardship for the employer); see also *Kummer v. Ill. Cent. R.R. Co.*, 2016 U.S. Dist. LEXIS 94372, *11-12 (N.D. Ill. July 20, 2016) (J. Coleman) (defendant cannot escape liability for failing to assign plaintiff to an open position for which he was qualified by demonstrating that there was a more qualified candidate); *Feldman v. Olin Corp.*, 692 F.3d 748, 756 (7th Cir. 2012) (plaintiff's alleged failure to bid on vacant positions not dispositive because employers can be required to bypass such procedural requirements). Rather, as the *Kummer* court recognized, if there was a vacant position for which Kinsella was qualified, the ADA required Baker Hughes to assign him to the position absent an undue hardship, not merely encourage him to apply. *See Kummer*, 2016 U.S. Dist. LEXIS 94372 at *12; *see also* EEOC Enforcement Guidance on Reasonable

24

Accommodation and Undue Hardship under the ADA, Reassignment pp. 30-36 (Examples A-D, Questions 28, 29).

Again, Wickliff correctly found that Kinsella was qualified for the open dispatcher position. A 15. Accordingly, Baker Hughes had a duty as a matter of law to appoint Kinsella to the dispatcher position when it opened, and the undisputed evidence shows it was open as of August 22, 2016. But for Wickliff exceeding his authority and adding fabricated, illegitimate elements of proof to the agreed failure to accommodate elements and issues that were submitted by the parties, he would have found Kinsella satisfied each Pattern Jury Instruction 4.03 element and prevailed on failure to accommodate by reassignment claim.

**III.     The District Court Erred in Finding that the Arbitrator did not Require Kinsella to Prove Discriminatory Intent and Causation.**

The District Court summarily concluded without any analysis or shred of reasonable rationale that Arbitrator Wickliff "never required plaintiff to bear the burden of establishing intent or animus, nor did he indicate that such a finding was an element of the claim," and that "[h]e simply added that he found no discriminatory animus on defendant's part, an issue that was relevant to other parts of his decision." A 4. The District Court's unsupported interpretation defies the wording, full context, emphasis and placement of Wickliff's erroneous discriminatory intent and causation findings. A 16.

First, why would an experienced (40 + years) attorney and arbitrator make four explicit findings of no discriminatory intent in the final two paragraphs of a three-paragraph ruling if he was not in fact holding Kinsella to proof of discriminatory intent? He of course would not. Further, Wickliffe made no effort to separate these explicit and detailed findings from his ruling that Baker Hughes did not fail to accommodate Kinsella or indicate that they were somehow incidental to his ruling. A 16. To suggest otherwise as the District Court did is devoid of logical or legal support.

Similarly, why would such an experienced attorney/arbitrator make three explicit findings of no causation (i.e., not due to/because of disability) in the final two paragraphs of a three-paragraph ruling on the failure to accommodate claim if he was not in fact holding Kinsella to proof of causation? Again, he of course would not. Wickliff simply made no effort to separate these explicit and detailed findings from his ruling that Baker Hughes did not fail to accommodate Kinsella or indicate that they were somehow immaterial to his ruling. A 16. Yet the District Court said nothing about these flawed findings. It completely ignored them.

Wickliff, on the other hand, did not ignore causation in ruling on the failure to accommodate claim. He made three explicit findings[3] that there was no evidence that

---

[3] (1) Baker Hughes decision-maker Kristyn Martinez did not fail to accommodate Kinsella "due to his disability," (2) "If Martinez did not want [Kinsella] to be assigned the dispatch job because of his disability, she would not have initiated the identification of the Dispatch position to [Kinsella] as a possible accommodation, . . .;" and, (3) " . . . the credible evidence shows no discriminatory animus by Martinez, or that she intentionally kept [Kinsella] from being

Baker Hughes failed to accommodate Kinsella because of his disability. Such findings

leave no doubt that Wickliff ruled against Kinsella on his failure to accommodate claim

because he failed to prove causation; and, as is not contested (see above), Kinsella had

no duty to prove causation to prevail on his failure to accommodate claim and the

parties did not submit a causation issue to Wickliff in connection with that claim.

Overall, any fair reading of Wickliff's three paragraphs would lead to the

conclusion that his numerous "no discriminatory intent" and "no causation" findings

were integral and indispensable to his determination that Baker Hughes did not fail to

accommodate Kinsella. In fact, but for these findings, there would be no stated rationale

at all to support the ruling. The District Court erred in finding otherwise.

## IV.     The District Court Also Erred in Finding that the Arbitrator Merely Applied the Wrong Legal Standard or Committed an Error of Fact or Law.

In concluding that Wickliff at most merely applied the wrong legal standard, or

committed legal or factual error, the District Court cited *Flender Corp. v. Techna-Quip Co.*,

953 F.2d 273 (7th Cir. 1992), and *Flexible Mfg. Sys. Pty. Ltd. v. Super Products Corp.*, 86

F.3d 96 (7th Cir. 1996). Neither are applicable here. For starters, neither case involved a

claim that an arbitrator exceeded powers under 9 U.S.C. §10(a)(4) by deciding issues not

submitted to them by the parties or by creating illegitimate legal requirements or issues

post-hearing and then applying them dispositively. In fact, both *Flender* and *Flexible*

---

assigned to the Dispatch job because of his disability, or that she intentionally caused the
interactive process to fail." A 16.

27

*Mfg.* as well as another comparable case, *BEM I, LLC v. Anthropologie, Inc.*, 301 F.3d 548

(7th Cir. 2002), support Kinsella's theory here: that arbitrators who vary from the legal

issues or the law submitted to them by the parties exceed their authority. *See Flender*

*Corp.*, 953 F.2d at 279; *Flexible Mfg.*, 86 F.3d at 100.

     *Flender* involved a wrongful termination of a contract action where plaintiff

Flender moved to vacate the arbitration award arguing it lacked factual basis, and that

the arbitrator misinterpreted the contract and failed to consider mitigation of damages

evidence. *Flender Corp.*, at 278, 280-81. There was no claim that the arbitrator decided

stray issues or claims that were not submitted to him, or otherwise exceeded his

authority. The District Court failed to explain how this case applied or supported its

denial of Kinsella's motion to vacate. To the contrary, *Flender* supports Kinsella's theory

by stating that "[n]evertheless, if we determine that the arbitrator clearly went beyond

the terms of the contract to reach the outcome indicated in his opinion, we will set aside

and vacate an arbitration award." *Id.* at 279.

     Similarly, *Flexible Manufacturing* was also a contract action where the defendant

at arbitration and then moved to vacate based on mere disagreement with the

arbitrator's findings as to who breached the contract and the proper damages. *Id.* at 100.

There was no claim that the arbitrator decided issues not presented to him or created

his own contract law or legal issues. The *Flexible Manufacturing* court also echoed

Kinsella's argument here that an arbitrator's deliberate disregard for what he knew to

be the law is grounds for vacating the award under Section 10(4). *See id.* at 100. That is

exactly what occurred here, where Wickliff knew the failure to accommodate

law/elements as had been agreed to and submitted by the parties, yet chose to create

new, illegitimate required elements and deny Kinsella's failure to accommodate claim

based thereon

    Finally, while Baker Hughes relied on *BEM I, LLC v. Anthropologie, Inc.*, 301 F.3d

548 (7th Cir. 2002) in the District Court, it is inapplicable in that it involved an

arbitration agreement set forth in a commercial property lease that stated the arbitrators

were to apply Illinois law and the arbitrators did in fact apply Illinois law. The

plaintiff's only argument in support of its motion to vacate was that the arbitrators

misapplied Illinois law. *Id.* at 553-54. Therefore, just like *Flender* and *Flexible Mfg.*, *BEM*

is also not a case where an arbitrator created new law or injected legal issues not

submitted by the parties, as Wickliff did here.

    The examples used in *BEM* also support Kinsella, not Baker Hughes in that they

demonstrate that Wickliff exceeded his authority. According to *BEM*, an arbitrator

exceeds his authority when he disregards the law agreed to and submitted to him by

the parties and instead applies a different law. *Id.* at 554-55. That is exactly what

Wickliff did here when post-hearing, he created new legal requirements for a failure to

accommodate claim, i.e., discriminatory intent, causation and must apply or timely

apply, that were not submitted to him by the parties and determined that Kinsella had

to meet them to prevail on his claim. That Wickliff "mentioned and applied" his new law under the auspices of the ADA as Baker Hughes so heavily relied on in the District Court makes no difference here and both Baker Hughes and then the District Court failed to explain why they believed so. There is simply no difference between devising new elements of proof that are not in the ADA (or any case) versus applying the law of a different state than the one agreed to by the parties as in *Edstrom*, or in the words of *BEM*, "us[ing] their own ideas of justice to decide the parties' dispute." *Id.* at 554. In both cases, the arbitrator exceeds their powers as well as deprives the movant of any chance at a fair shot at proving their case.

Making up new elements of proof after the close of the arbitration hearing is not a mere legal error. It is also not an "interpretation" of the statute or law agreed to be applied by the parties. Wickliff did not state he was "interpreting" any section of the ADA when he made up his new elements of proof for a failure to accommodate by reassignment case.  A 15-16. He did not cite a section of the ADA or the related regulations or any case in support of his new elements of proof. *Id.* He therefore did not "interpret" the ADA, and accordingly did not "misinterpret" the ADA.

In addition to *Flender*, *Flexible Mfg.*, and *BEM*, numerous other decisions where this Court has refused to vacate an arbitration award further highlight why reversal is warranted here.

For example, *Butler Mfg. Co. v. USW*, 336 F.3d 629 (7th Cir. 2003), involved a CBA

arbitration award in favor of employee and union on their claim that the employee's

termination for alleged excessive absences violated the CBA as well as federal law, i.e.,

the FMLA. The *Butler* court held that the arbitration award should have been enforced,

both because it had an adequate basis in the parties' CBA, and because both parties

agreed to allow the arbitrator to take the FMLA into account in his decision. *Id.* at 631,

634-36. Here, to the complete contrary, the parties agreed that Wickliff would decide the

failure to accommodate claim based on the standard, accepted elements of such claim as

set forth in the Seventh Circuit Pattern Jury Instruction 4.03. It is uncontested that the

agreed to and submitted legal issues did not include proving intentional discrimination

or causation or application for the open dispatcher position.

Another such case is *Williams v. RI/WFI Acquisition Corp.*, 2009 U.S. Dist. LEXIS

11115 (N.D. Ill. Feb. 11, 2009), invoked by Baker Hughes below. *Williams* also supported

Kinsella's motion to vacate because the court found that the "arbitrator specified the

elements of a prima facie case of employment discrimination and discussed those

elements in turn." *Id.* at *13-14. The court noted that each of the movant's claims of error

were no more than alleged errors in applying the correct elements of the applicable law:

"[a]gain, regardless of whether the arbitrator misapplied the law or the burden-shifting

test in this context, misapplication of the law is not grounds for vacating an arbitration

award under the FAA." *Id.* at *10-20. As such, the court rejected each of them and

upheld the award. *Id.* at *20. To the contrary, Wickliff applied his fabricated, illegitimate elements of the failure to accommodate *prima facie* case that had not been submitted by the parties.

Additionally, in the employment discrimination and retaliation case *Crosby v. Sears Holding Corp.*, 2018 U.S. Dist. LEXIS 45182 (N.D. Ill. March 20, 2018), the arbitrator entered summary judgment for defendant on his finding that there was no genuine issue of material fact regarding any of plaintiff's claims. *Id.* at *1-4. Plaintiff moved to vacate the award claiming that the arbitrator was partial and disregarded the law in that he "failed to 'point out' particular documents in the record that Plaintiff believes created a genuine issue of material fact." *Id.* at *5. The *Crosby* court denied the motion to vacate after finding that the arbitrator stated he considered the entire record, referenced each of the three pieces of evidence that the plaintiff claimed he ignored, and that the plaintiff merely disagreed with how the arbitrator weighed the evidence. *Id.* Here, Wickliff did not reference the elements of a failure to accommodate claim that were submitted to him by the parties and then explain why they do not apply. He did not attempt to analyze the ADA language or that of its implementing regulations or any case. That would have arguably been an "interpretation" of the ADA. He simply ignored the issues submitted by the parties without discussion or explanation and injected and decided his own issues.

Lastly, as explained above, while Wickliff "erred" when he exceeded his authority, that he did so in a manner that also was "legal error" does not cure his *ulta vires* act. The District Court in turn erred by failing to confront Kinsella's Section 10(a)(4) argument that Wickliff exceeded his powers and by limiting its decision to the "other," legal error along rote recitation of quotes from *Flender* absent any substantive analysis or cite to legal authority.

## CONCLUSION

Based on the aforementioned facts and law, the Court should reverse the District Court's denial of Kinsella's Motion to Vacate, vacate Arbitrator Wickliff's award with respect to Kinsella's failure to accommodate claim pursuant to 9 U.S.C §10(a)(4), and remand the claim to the District Court with instructions to apply the proper elements of proof as agreed to and submitted by the parties.

Respectfully Submitted,

By:  ____/s/ Timothy J. Coffey_____
Timothy J. Coffey, Esq.
THE COFFEY LAW OFFICE, P.C.
Attorneys for DONALD J. KINSELLA
118 N. Clinton Street, Suite 125
Chicago, IL   60661
(312) 627-9700

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that the foregoing Brief of Plaintiff-Appellant complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,193 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(b)(iii). The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2010 in 12-point Palatino Linotype Style font.

_____/s/ Timothy J. Coffey_____

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the Appendix.

_____/s/ Timothy J. Coffey_____

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2022, the Brief of Plaintiff-Appellant was filed

with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit

by using the appellate CM/ECF system.

The following participants in the case who are registered CM/ECF users will be

served by the appellate CM/ECF system:


David J. Rowland (drowland@seyfarth.com)
Seyfarth Shaw LLP
233 S. Wacker Drive
Suite 8000
Chicago, Illinois 60606


Linda C. Schoonmaker (lschoonmaker@seyfarth.com)
Seyfarth Shaw LLP
700 Milam St.
Suite #1400
Houston, Texas 77002-2812



_____ /s/ Timothy J. Coffey_____

## APPENDIX TABLE OF CONTENTS

District Court Order Denying Motion to Vacate........Appendix 1

District Court Order Entering Judgment……………Appendix 5

Arbitrator Memorandum Opinion……………………Appendix 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD J. KINSELLA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   18 C 4589 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| BAKER HUGHES OILFIELD OPERATIONS, | ) | |
| LLC, and BAKER HUGHES, A GE COMPANY, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Plaintiff Donald Kinsella sued his former employer defendants Baker Hughes Oilfield

Operations, LLC, and its owner Baker Hughes, a GE Company, LLC (jointly, "defendant"),

alleging (among other things) that defendant violated the Americans with Disabilities Act (the

"ADA") by failing to reasonably accommodate plaintiff's disability.   Because plaintiff's

employment contract contained an arbitration provision, the court granted a joint motion to stay

the case while the parties proceeded with the arbitration.   The parties selected arbitrator J. Martin

Wickliff, Jr. of Cozen O'Conner in Houston, Texas, who denied cross motions for summary

judgment and then conducted an in-person evidentiary hearing.   Once the arbitration hearing

closed, this court dismissed the instant case without prejudice.   On February 9, 2022, the

arbitrator issued a Memorandum Opinion and Award, concluding that defendant had not violated

the ADA in any manner and ruling against plaintiff on all his claims.   Plaintiff then moved to

vacate the dismissal and to reinstate the instant case, which the court granted to allow plaintiff to

move to vacate the potion of the arbitration award denying plaintiff's reasonable accommodation

**APPENDIX 1**

claim.   Plaintiff's motion to vacate the arbitration award is now fully briefed and, for the following reasons, denied.

        "Judicial review of arbitration awards is tightly limited.   Confirmation is usually routine or summary, and a court will set aside an arbitration award only in very unusual circumstances." Bartlit Beck LLP v. Okada, 25 F.4th 519, 522 (7th Cir. 2022) (quoting Standard Sec. Life Ins. Co. of N.Y. v. FCE Benefit Adm'rs, Inc., 967 F.3d 667, 671 (7th Cir 2020).   "Apart from the general reasons for setting aside any arbitral award found in the Federal Arbitration Act, 9 U.S.C. § 10 ["FAA"], the court may consider only whether an arbitrator exceeded the scope of authority conferred upon [him] by the parties' actions and agreements.[1]   With few exceptions, as long as the arbitrator does not exceed this delegated authority, [his] award will be enforced . . . even if the award contains a serious error of law or fact."   Butler Mfg Co. v. United Steelworkers of America, 336 F.3d 629, 632 (7th Cir. 2003).   "Otherwise, . . . arbitration would just be the first of a series of steps that always culminated in court litigation, and it would lose its raison d' etre." Id.

        In the instant case, plaintiff argues that the arbitrator "ignored the well-established law as agreed to and submitted to him jointly by the parties, and instead, without notice injected his own extrajudicial elements of proof and applied them to deny plaintiff's failure to accommodate claim."   By doing this, plaintiff argues that the arbitrator "unquestionably exceeded his arbitral powers," compelling the court to vacate that portion of the award and remand the claim back to the arbitrator with instructions to apply the well-established" elements of proof as agreed by the parties.

---

1 Section 10 of the FAA provides four grounds for vacating an award.   Only the fourth, "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made," is even arguably applicable.

2

**APPENDIX 2**

Defendant disagrees with plaintiff's interpretation of the award and, in particular, plaintiff's assertion that the arbitrator ignored well-established law and applied his own elements of proof.   Even if he did, defendant argues that there is no doubt that he was interpreting and applying the ADA as was his charge under the agreement.   Thus, even if he made a legal error, it is insufficient to vacate or overturn the award.

The court agrees with defendant.   In the portion of the award with which plaintiff takes issue the arbitrator found that plaintiff was facially qualified for a dispatch position, but that defendant did not fail to accommodate plaintiff, particularly because he repeatedly failed to comply with deadlines set for him to apply for the position.   Once he did apply, albeit late, he failed to inform defendant's HR Business Partner, who was attempting to help him find an appropriate position, of his application.   As a result, plaintiff was never interviewed by the dispatch supervisor and never vetted by the Hiring Manager, meaning he was never found qualified for the position.   The arbitrator concluded that there was a breakdown in the interactive process which resulted in plaintiff not getting the position.   The arbitrator found fault on both sides for the breakdown and then found that there was no evidence in the record that the HR partner harbored any discriminatory animus toward plaintiff or any other disabled person, or that she attempted to thwart plaintiff's efforts to find alternative employment that would be consistent with his medical restrictions.

Plaintiff argues that it is well settled that the ADA does not require a plaintiff to prove a defendant's discriminatory intent or animus to prevail on a failure to accommodate claim, and that the arbitrator injected that issue into the case.   As defendant points out, however, the arbitrator first found that plaintiff failed to timely apply for the position and, therefore, failed to initiate the

**APPENDIX 3**

process for him to be interviewed by the hiring manager.   And then, once he applied without receiving a second extension to do so, he failed to inform the HR partner who was attempting to help him.   As a result, the arbitrator found a breakdown in the interactive process with fault on both sides.   That was sufficient to reach his decision.   He simply added that he found no discriminatory animus on defendant's part, an issue that was relevant to other parts of his decision. He never required plaintiff to bear the burden of establishing discriminatory intent or animus, nor did he indicate that such a finding was an element of the claim.

Moreover, even if the arbitrator applied the wrong standard to plaintiff's claim, that does not justify vacating the award.   Despite plaintiff's protestations that his claim is not based on an error of fact or law, it is precisely that.   He argues that the arbitrator exceeded hie legal powers, but a losing party cannot "use issues of the arbitrator's authority as a ruse to obtain judicial review on the merits of an arbitral award."   Flender Corp. v. Techna-Quip Co., 953 F.2d 273, 378 (7th Cir. 1996).   "Stripped of its window-dressing, this argument is an attack on the arbitrator's resolution of the merits,"— his finding that that defendant did not violate the ADA by failing to accommodate plaintiff.   Id.   Factual or legal errors by arbitrators, even clear or gross errors, do not authorize courts to vacate awards.   Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp., 86 F.3d 96, 100 (7th Cir. 1996).   Consequently, plaintiff's motion to vacate [Doc. 51] is denied.[2]

**ENTER:**

_Robert W. Gettleman_
**Robert W. Gettleman**
**United States District Judge**

**DATE:     May 11, 2022**

---

2  In its response to plaintiff's motion, defendant requests sanctions under Fed. R. Civ.11.   Because the court finds that plaintiff's motion was not brought in bad faith or frivolously, the court denies defendant's requests for sanctions.

4

**APPENDIX 4**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**

Donald J. Kinsella,

Plaintiff(s),

v.                                                      Case No. 18-cv-04589
                                                       Judge  Robert W. Gettleman

Baker Hughes Oilfield Operations, LLC,

Defendant(s).

**JUDGMENT IN A CIVIL CASE**

Judgment is hereby entered (check appropriate box):

☐   in favor of plaintiff(s)
    and against defendant(s)
    in the amount of $

        which ☐ includes      pre–judgment interest.
              ☐ does not include pre–judgment interest.

    Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

    Plaintiff(s) shall recover costs from defendant(s).

─────────────────────────────────────────────────────────

☐   in favor of defendant(s)
    and against plaintiff(s)

    Defendant(s) shall recover costs from plaintiff(s).

─────────────────────────────────────────────────────────

☑   other: case dismissed.

─────────────────────────────────────────────────────────

This action was *(check one)*:

☐ tried by a jury with Judge                          presiding, and the jury has rendered a verdict.
☐ tried by Judge                        without a jury and the above decision was reached.
☑ decided by Judge  Robert W. Gettleman

Date: July 1, 2022             Thomas G. Bruton, Clerk of Court

**APPENDIX 5**

IN THE MATTER OF ARBITRATION BETWEEN

| | | |
|---|---|---|
| DONALD J. KINSELLA, | § | |
| | § | |
| *Claimant* | § | |
| | § | |
| vs. | § | CASE: 1:18-cv-04589 |
| | § | |
| BAKER HUGHES OILFIELD OPERATIONS, | § | A. Martin Wickliff, Jr., Arbitrator |
| LLC, and BAKER HUGHES, A GE | § | |
| COMPANY, LLC, | § | |
| | § | |
| *Respondents* | § | |

**MEMORANDUM OPINION AND AWARD OF THE ARBITRATOR**

**ORDER NO. 25**

I, THE UNDERSIGNED ARBITRATOR, having been designated pursuant to Respondents' Employee Agreement, and having convened an evidentiary hearing October 4-6, 2021, in Houston, Texas, with all parties present, and having duly heard the evidence; and Donald J. Kinsella is represented by Timothy J. Coffey of the Coffey Law Office, P.C., and Baker Hughes is represented by Linda C. Schoonmaker, Brian A. Wadsworth and David J. Rowland of Seyfarth Shaw, hereby AWARD, as follows:

## I.     INTRODUCTION

The parties previously filed cross-motions for summary judgment on Claimant's claims. Claimant's motion was granted, in part, and denied in part; and Respondents' motion was denied (Order No. 21). No counterclaim has been filed in this action.

At the evidentiary hearing, the parties presented evidence on Claimant's claims, pursuant to the Americans With Disabilities Act ("ADA"), as amended, 42 U.S.C. 12101, *et seq.* (failure to accommodate and discrimination); and retaliation under the Illinois Workers Compensation Act ("IWCA").

**APPENDIX 6**

After the close of the evidentiary hearing, the parties filed their post-hearing briefs; and the hearing was declared closed January 10, 2022. The Arbitrator's Award is due February 9, 2022.

## II.    FACTUAL BACKGROUND

### A.    Employee Agreement

\* \* \* \* \* \*

**17. ARBITRATION.** Either Employee or Company may elect to submit any controversy or claim arising out of or relating to Employee's employment, including but not limited to termination and the manner or reason thereof, or the breach of this Agreement, and claims arising under federal or state law for discrimination based on age, sex, race, disability, national origin, or other impermissible basis, to binding arbitration for final settlement in accordance with the rules of the American Arbitration Association. Judgment upon as arbitral award may be entered in any court having jurisdiction thereof. Either Employee or Company without any restriction and without limiting their right to arbitration may seek equitable remedies, including injunctive relief and specific performance, in any court of competent jurisdiction concerning disputes involving paragraphs 1, 2, 3, 4, and 5. Venue for arbitration shall be Houston, Texas, and the arbitral tribunal shall use the laws of the State of Texas, exclusive of the choice of law provisions, in construing and interpreting the terms of this Agreement.

### B.    Claimant's Employment History While Employed at Respondents

Claimant began working for Respondents in July 2012, as a Field Operator on a rotational basis, working 14 days on, seven days off. In June 2013, Claimant sustained on-the-job injuries to his knees, which left him unable to work for approximately three years. Claimant received medical treatment for these injuries; filed a workers compensation claim; and was medically released in September 2013, to work only sedentary jobs; he was later completely restricted from all work December 2013 to January 2016.

Claimant received short-term ("STD") and long-term disability ("LTD") benefits, pursuant to Respondents' disability insurance policies; and in June 2016, he underwent a functional capacity examination ("FCE"). As a result, Claimant's physician returned him to work with restrictions to work in sedentary jobs, pending further medical procedures.

**APPENDIX 7**

After Claimant's LTD benefits were exhausted, Respondents' HR Department assisted him in finding other employment. Amanda Person ("Person") was Respondents' Leave of Absence HR Representative, and Kristyn Martinez ("Martinez") was Respondents' HR Business Partner. Person asked Martinez to contact Claimant about his medical condition and ability to work; and she told Martinez if Claimant were able to work, with or without restrictions, he should complete Respondents' ADA RA Request form, as a part of the interactive process to determine whether Respondents could reasonably accommodate him. Person also told Martinez if there were a role for which Claimant was qualified and which has not been posted, she should talk to the appropriate manager to request an interview for Claimant.

### C.    Claimant's Accommodation Requests

To begin the interactive process, Martinez contacted Claimant to advise him to complete Respondents' ADA RA Request form; she told Claimant to return the completed form by April 22, 2016. In his completed form, which Martinez received April 28, 2016, Claimant noted he was permanently restricted to sedentary work, and would require knee surgeries; he told Martinez he had lifting restrictions of 10 pounds; he could not use ladders; and was restricted using stairs, as well as restrictions his doctor placed on him regarding standing and sitting. Based on his restrictions, Martinez told Claimant that Respondents would not be able to accommodate him in his Field Operator III job. However, Martinez told Claimant July 21, 2016, he had 30 days to find alternative work for which he was qualified through Respondents' careers website; failing to find alternative work in that 30-day time period would result in Claimant's termination.

**APPENDIX 8**

Notwithstanding the August 20, 2016 expiration of the 30-day period, that resulted in Claimant's termination, Martinez continued with the ADA interactive process by talking to Claimant August 31, 2016, and suggested he apply for the Dispatcher position, a sedentary job.[1] As part of the interactive process, Claimant was told by Martinez to apply for the Dispatch job by September 6, 2016; she also told him to keep her apprised of any developments in his application process, since some requisitions were time-sensitive based on need. Claimant did not apply for the Dispatch job by September 6; Martinez then extended Claimant's application period to September 9, 2016; but, Claimant, again, did not apply within the time period set by Martinez; and he did not update her about his application process. However, Claimant applied for the Dispatcher position September 10, 2016, without an extension approval from Martinez to again extend the application deadline.[2] Claimant was "rejected" September 10, 2016, for the job, according to Respondents' internal documents. Claimant's application receipt, however, from Respondents' Recruiting Department, dated September 10, 2016, acknowledged Claimant's application, and indicated his experience and qualifications for the position would be reviewed; and he would be advised about the status of his application or whether this Dispatch position had been filled. Claimant received no follow-up from Respondents about the status of his application, nor did he keep Martinez apprised that he had untimely applied, but had not received any follow-up about the application process. According to Claimant, the Dispatcher position was the only available job for which he felt he was qualified.

---

[1] The Dispatcher position became available August 22, 2016, but had not been posted at that time. Martinez had not told Claimant about the job before August 31, 2016. Also, prior to August 31, 2016, she had not contacted the Hiring Manager for the open Dispatcher position to ask him to interview Claimant.

[2] Claimant emailed Martinez September 9, 2016, to state he had not applied September 9, because his home electricity was out.

4

The Dispatcher position was officially posted August 27, 2016, and Dennis Meador ("Meador"), a non-disabled employee who had not filed a workers compensation claim, had been identified August 26, 2016, as a candidate of interest; and by September 8, 2016, he had been selected to receive an offer for the Dispatcher position. Meador was offered the Dispatch job September 15, 2016; he accepted the job September 22, 2016; and he started working September 25, 2016.

Claimant had two separate profiles in Respondents' Taleo electronic system, which Respondents used to track job applications. Martinez was not aware of Claimant's two profiles in Taleo, and testified that she did not see Claimant's application in the particular profile she had examined before she sent Claimant his October 25, 2016 termination letter; and, as a result, she was not aware that Claimant had, in fact, applied September 10, 2016, for the Dispatcher position.[3]

Claimant was terminated a second time October 25, 2016, by Martinez and Victor Martinez, Claimant's former supervisor, due to Respondents' mistaken understanding he failed to pursue or obtain a position with Respondents; however, Claimant was invited to reapply for positions in the future. In response to his second termination letter,[4] Claimant replied October 31, 2016, that he had, in fact, applied September 10, 2016 for the Dispatch position; he attached a receipt that confirmed his application for the Dispatch job had been acknowledged by HR.

After Claimant's explanation that he had applied for the Dispatch job, Hal Roach, Respondents' investigator who is also an attorney, began an internal dialogue in November 2016 with certain HR Representatives, as well as with Claimant and/or his attorney, about the issues

---

[3] Because Martinez was not aware Claimant had applied for the Dispatch job, he was never interviewed by the Hiring Manager for the Dispatch job.

[4] Victor Martinez, as Claimant's former manager over this line of business, signed the termination letter, albeit he was not the Hiring Manager for the Dispatch position. Martinez testified at the hearing that she did not tell Victor Martinez prior to October 25, 2016, that Claimant had applied for the Dispatcher position.

**APPENDIX 10**

Claimant raised regarding his termination letter, including a review by Roach of Claimant's September 10, 2016 application for the Dispatch position. Roach received approval January 25, 2017, from David Dillon, Respondents' Vice President of Pressure Pumping North America, to reinstate Claimant to his prior status of "Inactive/LTD," which Respondents state was his status at the time of his termination. An email from Roach also stated, "Once reinstatement is finalized, we will also be in contact with him regarding the return to work process we were working through with him as of October." Roach felt reinstatement was appropriate because Respondents made a mistake in failing to consider Claimant for the Dispatch position; "that the error was found, and allow him to start over as far as coming off of leave status and finding a new role in the company." Roach believed reinstatement would resolve the mistake, and put Claimant in the position that he had been, and restart the return to work process to finding a new role in the company.

Throughout 2017 until mid-July 2017 when discussions ceased, Roach and Claimant or his counsel discussed or emailed one another about Claimant's return-to-work. Respondents did not indicate its intention to withdraw reinstatement of Claimant, and Claimant did not reject Roach's proposal reinstatement resolution.

## III.      DISCUSSION AND ANALYSIS

### A.      Applicable Law

Respondents re-urge their contention that the appropriate circuit law to apply is Fifth Circuit Law. The parties previously briefed this issue, and the Arbitrator concluded Seventh Circuit Law applied to the facts of this case; see Order No. 3, dated April 30, 2019. After reviewing Respondents' arguments and the parties' prior briefing on this question, the Arbitrator's prior ruling remains. Therefore, Seventh Circuit law shall apply to the facts of this matter.

6

**APPENDIX 11**

## B.     The Timeliness of Claimant's ADA Claims

As stated in Order No. 3 and Order No. 16, the Arbitrator determined Claimant's ADA Claims are not time-barred.  Respondents have also re-urged consideration of these issues.

Equitable tolling and equitable estoppel were discussed by the Arbitrator in Order No. 3, as these concepts might apply to the facts of this case. The Arbitrator discussed the confusion in the Record about the exchanges between Claimant and Respondents regarding his filed application for the Dispatch job; that the termination issue was found not to be time-barred, but the accommodation issue was initially dismissed in Order No. 3 as being time-barred. However, Claimant filed a Motion to Reconsider the accommodation issue, and the Arbitrator concluded upon reconsideration that Claimant's accommodation request was not time-barred.  Moreover, at the hearing the credible evidence confirmed that Claimant's ADA claims are not time-barred because, among other reasons, Claimant did not know his online application had been rejected in the Taleo system; Claimant was not told Meador had been selected to fill the Dispatch job in September 2016, all of which he learned in discovery; and Respondents had not disclosed to Claimant that he was not going to be assigned the Dispatch job.

Respondents make the additional argument that equitable tolling is not appropriate because the parties had engaged in settlement negotiations prior to the filing of his charge of discrimination. Respondents cite to *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 875 (7th Cir. 1997) (holding that settlement discussions do not extend the statute of limitations).

The parties did not engage in typical settlement negotiations after Claimant's second termination letter. After receiving his second termination letter, Claimant contacted Martinez to correct content errors in the letter; he provided proof (Respondents' receipt of his application) that he had, in fact, applied September 10, 2016, for the Dispatch position. The parties talked about the sequence of events, and Hal Roach undertook an investigation; he concluded Respondents made a

7

mistake in its understanding about whether Claimant applied for the Dispatch job. Roach decided, along with the concurrence of David Dillion, Vice President, that Claimant should be reinstated to the status he had when he was terminated October 25, 2016, due to the error by Martinez in her belief and understanding that Claimant had not applied for the Dispatch job.

The Arbitrator concludes under these circumstances the discussion between Roach and Claimant, as well as his counsel, show factual clarification discussions, as well as an admission by Roach that Respondents had made a mistake about Claimant's actual application for the Dispatch position. The evidence at the hearing, as well as Respondents' settlement negotiations argument, do not persuade the Arbitrator that Order Nos. 3 and 16 should be reversed.

### C.    Claimant's Qualifications for the Dispatcher Position

To prevail on Claimant's Accommodation and Termination Claims, brought under the ADA, he must demonstrate that he was "qualified" for the Dispatcher position. At the Evidentiary Hearing, Claimant met his burden to demonstrate he was facially qualified for the Dispatcher job.

"An employee is 'qualified' for a position if s/he: (1) satisfies the requisite skill, experience, education, and other job-related requirements of the position, and (2) can perform the essential functions of the new position, with or without reasonable accommodation." EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA; 29 CFR § 1630.2(m); *Conners v. Wilkie*, 984 F.3d 1255, 1261 (7th Cir. 2021) (*citing Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241-42 (7th Cir. 2018)).

Claimant described his qualifications to include:

1.    a high school graduate with in excess of 50 hours at a junior college with a focus on construction management;

2.    an active CUL license since he was 18 years old with a HAZMAT endorsement, tanker endorsements, combination endorsements for chemicals that has allowed him to operate heavy equipment, trucks, dump trucks;

8

3.   1995-2003 to 2005- Director of Operations and part owner of DJ Investments, Inc., which invested in and formed numerous LLCs for the purpose of developing land for retail strip malls including earth moving and the build-out of all necessary infrastructure including sewers, utilities, parking lots, etc.; duties consisted of daily hands-on management and oversight of up to 25 employees, 50 sub-contractors, multiple work sites, dispatching and assigning workers, equipment, materials, etc., to/from/in between jobs, DOT regulation compliance and reporting; troubleshooting and resolving all issues; work weeks averaged 60- 80 hours;

4.   2004-2011 — Director of Operations and part owner of Freecrest Investments LLC, which, similar to DJ Investments, invested in, developed, managed and/or sold various commercial properties; duties consisted of daily hands-on scheduling, managing, directing, dispatching of numerous contractors/workers to build-out infrastructure and troubleshoot and resolve all issues, DOT regulation compliance and reporting;

5.   2002-201 1 — Dir. of Ops., Plainfield Village Square, LLC, a 55,000 sq. ft. retail/office complex with over an acre of underground water retention; duties consisted of managing the build-out and operations including dispatching thousands of material trucks in/out for stone and excavation, and maintaining work tickets, logs, etc. per DOT regs as well as responsibility for setting and meeting financial budget, tenant relations;

6.   2005-2011 — consulting and inspection work in connection with the build-out/expansion of a national cemetery in Elwood, IL per a contract with the Dept. of Defense; duties included inspection of work progress to ensure compliance with federal/state/local regulations/laws and communications with client and governmental bodies;

7.   use of and proficiency with various software in connection with the aforementioned work including, e.g., Excel. Windows 10, Microsoft Word, PowerPoint; and

8.   promoted twice within seven months of starting his employment with Respondents.

This evidence demonstrates Claimant had over 15 years of related work experience; experience dispatching equipment and personnel; ability to handle, trouble shoot and resolve issues; communications skills; advanced organization and computer skills; and an understanding about executing work instructions.

9

**APPENDIX 14**

The Arbitrator finds Claimant was facially qualified for the Dispatcher position[5], albeit he was not interviewed by the Hiring Manager, who makes the final determination after interviewing Claimant about whether he, in fact, met the qualifications for the Dispatch job.[6]

### D.     Did Respondents reasonably accommodate Claimant?

Although the evidence supports the conclusion that Claimant was facially qualified for Respondents' Dispatch position, did Respondents fail to reasonably accommodate Claimant? When Martinez suggested to Claimant that he should apply for the Dispatch job, she gave him deadlines by which he was to apply, due to the time-sensitive nature of this position; she also told Claimant to keep her informed about his job applications.[7] However, Claimant failed to timely apply for the Dispatch position, which would initiate the process to be interviewed by the Hiring Manager; once he applied, he did so untimely without any extension request approval by Martinez. Moreover, Claimant failed to keep Martinez abreast of his Dispatch job application. These were important aspects of Claimant's job search that would have permitted Martinez to refer Claimant to the Dispatch Hiring Manager to be interviewed, even before the job was posted.[8]

---

[5] Martinez suggested Claimant apply for the Dispatch job, and she believed he was ostensibly qualified for this job. Roach and Victor Martinez did not have any information to suggest Claimant was not qualified for the Dispatch position. However, Claimant had to be vetted by the Hiring Manager for the Dispatch position before he could be deemed qualified for the job.

[6] Claimant was not interviewed by the Dispatch Supervisor because Martinez did not realize Claimant's application (completion of the ADA RA request form) had been filed in one of Claimant's two profiles in Respondents' Taleo electronic system. As a result, there was no official determination by the Dispatch Hiring Manager that Claimant, in fact, met the qualifications of the Dispatch job.

[7] Claimant argues Respondents had a duty under the ADA to appoint Claimant to a vacant job for which he is qualified, citing *EEOC v. United Airlines, Inc.*, 693 F.3d 760 (7th Cir. 2021) and 42 U.S.C.§ 12111(9). However, the Hiring Manager did not interview and opine that Claimant was, in fact, qualified for the vacant Dispatch job. Claimant could not be automatically assigned the Dispatch job without at least the Hiring Manager's opinion that Claimant was qualified for this particular position.

[8] The parties have made contrary arguments about whether Respondents were required to automatically assign Claimant to the Dispatch job. This is a moot point because the Dispatch Hiring Manager did not have the opportunity to interview Claimant to determine whether he, in fact, met the qualifications of the Dispatch position;

**APPENDIX 15**

Even though Martinez should have found Claimant's Dispatch application if she had reviewed both of his profiles in the Taleo system, her failure to do so does not result in a conclusion that she failed to accommodate Claimant due to his disability . Martinez is the one who found and suggested the Dispatch job opening to Claimant as a potential accommodation for him;[9] and there is no evidence in the Record that she harbored any discriminatory animus against Claimant or any other disabled person, or that she attempted to thwart his efforts to find alternative employment that would be consistent with his medical restrictions. If Martinez did not want Claimant to be assigned the Dispatch job because of his disability, she would not have initiated the identification of the Dispatch position to Claimant as a possible accommodation, or taken the extra steps after August 21, 2016, to assist him in the interactive process. The Arbitrator concludes from the credible evidence that there is fault on both parties in the interactive dialogue process.

The Arbitrator concludes mistakes were made in the interactive process; but, the credible evidence shows no discriminatory animus by Martinez, or that she intentionally kept Claimant from being assigned to the Dispatch job because of his disability, or that she intentionally caused the interactive process to fail. Therefore, the preponderance of the credible evidence shows Respondents did not fail to reasonably accommodate Claimant's disability.

---

as a result, the Hiring Manager was unable to place Claimant in the Dispatch job, even before it was posted. Moreover, Person's initial  instructions to Martinez about having Claimant interviewed before the job was posted, if possible, showed Respondents' desire to give Claimant the first opportunity to be considered for the Dispatch job.

[9] At the hearing, Martinez testified she felt Claimant could do the Dispatch job because it was a "sitting job," and that would be a way to accommodate his medical restrictions. Martinez said she did not know whether Claimant was really substantively qualified for this particular Dispatch job.

**APPENDIX 16**

**E.    Did Respondents Terminate Claimant's Employment Because of His Disability?**

To prevail on his ADA discrimination claim, Claimant must prove Respondents "would not have [terminated his employment] if [he] had not had a disability, but everything else had been the same." Seventh Circuit Pattern Jury Instructions, § 4.02.  In a disability case, a plaintiff must ultimately show that his disability was the "but for" cause of his termination.  *See Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015) and *Jackson v. City of Chicago*, 414 F.3d 806 (7th Cir. 2009); 42 U.S.C. §12111(8).

To satisfy this element, Claimant must prove more than that Respondents made a mistake in their decision to terminate his employment or that Respondents' decision was based on inaccurate information.  To prevail, Claimant must prove that Respondents intentionally disguised their mistake, and it was actually retaliation.  *See, e.g., Collins v. Am. Red Cross*, 715 F.3d 994, 1001 (7th Cir. 2013) ("And so we are left, at most, with evidence that the [defendant] was wrong. That is not enough to survive summary judgment on a discrimination claim."); *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 823 (7th Cir. 2006) (*quoting Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) ("Even if an employer's decision is mistaken, there is no pretext so long as the decision-maker honestly believed the non-discriminatory reason.")  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011) ("the plaintiff must present evidence suggesting that the employer is dissembling" about the purported reason for the adverse employment action.).  In other words, "[t]he question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Id.*; *see also Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012) ("[I]t is not the court's concern that an employer may be wrong ... .") (internal citations omitted).  This holds true in the context of the ADA.  *See, e.g., Smith v. Levy Sec. Corp.*, 09 CV 7472, 2012 WL

1655955, at *9 (N.D. Ill. May 10, 2012). Moreover, the plaintiff must point to evidence from which a reasonable jury could conclude that the defendant's stated reasons for terminating him were "phony" or a "lie" to hide intentional discrimination. *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). The Seventh Circuit has also held that a "substantial time lapse between the events is counter-evidence of any causal connection." *Johnson v. Univ. of Wisconsin-Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995), *abrogated on other grounds by Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004) (internal citations omitted). A period of 16 months or greater constitutes a "substantial time lapse." *Id.*

Claimant failed to present credible evidence of discrimination by Respondents. At the hearing, Claimant needed to prove his disability was the "but for" reason for his termination. *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994).[10]

Respondents point to the following evidence presented at the Evidentiary Hearing that warrants a finding there was no discriminatory animus by Respondents:

1.  Respondents were aware of Claimant's disability in 2013, yet there was no adverse employment action until more than three years later. Claimant's work restrictions in 2016 were caused by his 2013 work accident. Thus, Claimant had his disability in 2013 and the lack of temporal proximity weighs heavily in favor of Respondents.

2.  Respondents permitted Claimant to remain employed and on indefinite leave for more than three years, which goes well beyond its ADA accommodation obligations.

3.  Once Claimant was cleared to return to work, Respondents engaged in the interactive process with him to determine if they could return him to work in his previous position with a reasonable accommodation. This effort by

---

[10] Martinez made mistakes, and did follow all of Person's instructions; however, there is no evidence she treated Claimant differently than non-disabled employees. Moreover, this is not a "wrongful termination" case; Plaintiff has to prove his disability was the "but for" cause for his termination. The preponderance of the credible evidence does not support a finding that claimant's disability or his ADA protected activity was the "but for" cause or "because of" Claimant's termination. *Kurtzhals v County of Dunn*, 969 F.3d 725 (7th Cir. 2020); *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005).

**APPENDIX 18**

Respondents undermines Claimant's speculation that Respondents were unwilling to accommodate his alleged disability.

4.    After it became clear that Claimant could not be accommodated in his previous position, Respondents extended their typical 30-day deadline for Claimant to find a new position by approximately eight months. This gave Claimant ample time not only to find a new position that could accommodate his restrictions, but also additional time to appeal the denial of his disability benefits.

5.    It is undisputed that under Respondents' policy it was Claimant's obligation to search for new positions for which he was potentially qualified. *Dunderdale*, 807 F.3d at 857 ("it was [plaintiff's] duty to search Skynet for job openings while he was receiving benefits on EIS, and his failure to do so does not establish that [defendant] failed to reasonably accommodate his disability."). Despite this obligation, Claimant could not explain why he failed to find the Dispatcher position on his own. The dispatcher position was posted publicly for anyone to find. If he were actually searching for positions, he would not have needed Martinez to notify him of the position.

6.    Even though Respondents' policy required Claimant to search for and secure a new position, Respondents made additional efforts on his behalf, and found the Dispatch position for him.

7.    After Martinez apprised Claimant of the Dispatcher position, she gave him two extensions to apply to the position. In total, he had 12 days to apply for the dispatcher position, but failed to meet the first two deadlines.

8.    Martinez informed Claimant he should keep her apprised of the status of his applications. Despite this, Claimant failed to keep her apprised of his application for the dispatcher position.

9.    Respondents would not assess Claimant's qualifications for the Dispatch job until he applied. The only reason Respondents failed to assess Claimant's qualifications for the Dispatcher position was due to Martinez's lack of knowledge that he had applied. She did not find Claimant's application in Respondents' Taleo electronic system, though it was in one of his two profiles.

10.    Martinez did not know that Claimant had applied for the Dispatcher position until after his second termination; Roach concluded this was a simple mistake.

Once Roach concluded Martinez made a mistake in Claimant's application process, he recommended, with the permission of Dillion, to reinstate Claimant to his status as of October 25, 2016 (the date of his second termination letter). Email exchanges between Claimant's lawyer and

14

Roach showed Claimant would be reinstated, albeit Claimant did not actually formally accept or reject Roach's conclusion and resolution of the termination dispute.[11]

Respondents acknowledged the mistake made by Martinez in her failure to identify Claimant's job application in the Taleo system; this mistake is insufficient to establish an ADA discriminatory termination. *Hague*, 436 F.3d at 823. "Even if our employer's decision is mistaken, there is no pretext so long as the decision-maker honestly believed the non-discriminatory reason."[12] *Id.* at 816. *See also Coleman v. Donahoe*, 667 F.3d 875, 892 (7th Cir. 2012 ) ("it is not the court's concern that an employer may be wrong."). Claimant did not establish by a preponderance of the credible evidence that his termination was the result of ADA discrimination.

### F.    Claimant's Workers' Compensation Claim

To succeed on a retaliation claim under the IWCA, Claimant must show:

First, that the plaintiff was ... [fired] from [his] ... employment with the defendant;

Second, that the plaintiff was ... [fired] ... [because he filed a workers' compensation claim in 2013];

Third, that the plaintiff sustained damages as a result of [his] ... [firing]; [and]

Fourth, that the reason(s) stated in paragraph ["Second"] above [was] ... a proximate cause of [his] ... [firing] and resulting damages.

Illinois Pattern Jury Instructions, § 250.02

---

[11] In footnote 12 of Claimant's post-hearing brief, he requests sanctions regarding Respondents' answers to Claimant's interrogatories and Roach's hearing testimony. No formal motion was made prior to the January 10, 2022 close of the hearing, with an opportunity to be heard by Respondents. Therefore, this request is denied. Further, although Roach's testimony was concerning, it did not disturb the conclusion that Claimant's disability was not the cause of his termination.

[12] Claimant also makes the argument that his termination was in retaliation of his ADA protected activity – that there was a causal connection between the two. There is insufficient evidence in the Record that would permit a reasonable fact finder to conclude that retaliatory motive caused Claimant's discharge. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556 (7th Cir. 2016).

**APPENDIX 20**

To prove retaliatory discharge and/or rehire or recall Claimant must show (1) Respondents refused to recall him back to work, discharged him and/or refused to reinstate him; (2) these refusals and/or discharge were motivated, in whole or in part by has activities; and (3) which were protected by clearly mandated public policy, as described in the IWCA. *Barr v. Kelso-Burnett Co.* 106 211 2d 520, 527-29 (1985).

As with his ADA retaliation claim, Claimant cannot prevail by simply showing Respondents' reason for the termination was wrong or false. *Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 303 (7th Cir. 2010); *Robinson v. Stanley*, No. 06 C 5158, 2011 WL 3876903, at *6 (N.D. Ill. Aug. 31, 2011) (granting summary judgment on plaintiffs state law retaliatory discharge claim because plaintiff did not provide any evidence of causation and instead simply argued that defendants' proffered reason for terminating her employment was a pretext for retaliatory discharge). Rather, Claimant must prove that "[Respondents'] actual motivation for terminating him was his filing of a workers' compensation claim ... ." *Bob-Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp. 3d 854, 888 (N.D. Ill. 2014). Indeed, causation requires a plaintiff to demonstrate an employer's motive in discharging the employee. *Matros v. Commonwealth Edison Co.*, 2019 IL App (1st) 180907, ¶ 136, 136 N.E.3d 83, 107, appeal denied, 135 N.E.3d 566 (Ill. 2019) ("In that respect, our supreme court has repeatedly emphasized that "[w]hen deciding the element of causation, the ultimate issue is the employer's motive in discharging the employee."). Otherwise, without proving an actual discriminatory motive, Claimant's claim fails. *Bob-Maunuel*, 10 F. Supp. 3d. at 888.

**APPENDIX 21**

With respect to proximate cause, Claimant cannot "succeed in establishing causation by showing that retaliation was one of several motives leading to the employee's discharge and therefore 'a proximate cause of that discharge.'" *Matros*, 2019 IL App (1st) 180907 at ¶ 138 (internal citations omitted).

The lack of temporal proximity and relevant timeline apply. Claimant was injured June 24, 2013, at work in Hobbs, New Mexico. He sought, and eventually received, workers' compensation benefits shortly after his injury. Therefore, he engaged in activity protected under the IWCA more than three years prior to his termination. According to the Seventh Circuit, this is more than double the time period that constitutes "a substantial time lapse ... ," which greatly undermines Claimant's causation argument. *Johnson*, 70 F.3d at 480.

Claimant argues he engaged in protected activity in 2016 when he appealed his long and short-term disability benefits. Even if Claimant were able to demonstrate that appealing his disability benefits was protected by the IWCA, this argument ignores the point Respondents took no adverse action against Claimant for more than three years after he sought workers' compensation benefits. Likewise, Respondents extended their routine 30-day window for Claimant to secure a position by approximately eight additional months to permit him to not only secure another position, but also appeal the denial of his long term benefits. Moreover, Respondents, in fact, searched potential positions for Claimant, and identified the Dispatcher position for him.

The preponderance of the credible evidence supports the conclusion that Respondents took no action against Claimant because of his workers' compensation claim or because of his activity that is protected by the IWCA and Illinois common law. Claimant failed to meet by the preponderance of the credible evidence the causation element of this claim. Claimant has not shown a violation of the Illinois Workers Compensation Statute.

**APPENDIX 22**

### G.    Damages Issues

Since the Arbitrator has held Respondents did not violate the ADA reasonable accommodations and discrimination provisions, as well as the Illinois Workers Compensation Statute, the issues of damages are a moot point.

### CONCLUSION

Respondents did not violate the ADA. They did not fail to reasonably accommodate Claimant; they participated in good faith in the interactive process.  Also, Respondents did not retaliatorily terminate Claimant in violation of the ADA.

Respondents did not violate the Illinois Workers Compensation Statute.

This Award is in full resolution of all claims submitted to this Arbitration.  All claims not expressly granted herein are hereby denied.

SIGNED in Houston, Texas this 9th day of February 2022.


A. MARTIN WICKLIFF, JR.
ARBITRATOR

559158206

18

**APPENDIX 23**